[Cite as *Wilkerson v. Wilkerson*, 2014-Ohio-1322.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| DEAN H. WILKERSON, | : | CASE NO. CA2013-06-089 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>3/31/2014 |
| - vs - | : | |
| | : | |
| CHUN C. WILKERSON, | : | |
| Defendant-Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2001-06-0775

Michael P. Masana, 220 South Monument Avenue, Hamilton, Ohio 45011-2836, for plaintiff-appellee

Samuel D. Borst, 3247 Camden Road, Eaton, Ohio 45320, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Chun C. Wilkerson (Mother), appeals from the judgment of the Butler County Common Pleas Court overruling her Civ.R. 60(B)(5) motion for relief from the 2004 parenting decree naming plaintiff-appellee, Dean H. Wilkerson (Father), residential parent of the parties' minor child and ordering Mother to pay child support to Father. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} Father met Mother while he was serving in the military overseas in Korea. The parties married in 1976, divorced in 1979, and remarried in 1980. There are two children of the marriage, one born in 1985 and the other in 1993. The parties divorced again in 2002. During the parties' 2001-2004 divorce proceedings, a hearing was held on the allocation of parental rights and responsibilities regarding the parties' two minor children, one of whom turned 18 during the course of the proceedings and thus became emancipated. The trial court appointed Dr. Charles Lee, a psychologist, to evaluate the parties and their two children. Dr. Lee issued a report on January 31, 2002, recommending treatment for all family members, particularly the parties' younger child, and that the trial court issue a shared parenting plan despite the fact that neither parent desired one.

{¶ 3} Father hired Dr. Michael Hartings, a psychologist, to provide expert testimony on his behalf. Dr. Hartings met with Father in March 2002, and met with Mother and the parties' two children in November 2002. Dr. Hartings issued three reports. In his first report, dated April 24, 2002, Dr. Hartings reviewed Dr. Lee's report and was harshly critical of the methodology Dr. Lee used in preparing it. Dr. Hartings stated at one point in the report that "[Mother]'s observed behavior strongly suggests a moderate to severe personality disorder, of the histronic [sic], borderline, or schizotypal type." In his second report, dated April 28, 2002, Dr. Hartings evaluated Father's fitness to be a parent, and concluded "to a reasonable degree of psychological certainty * * * that [Father] is quite suitable and capable of parenting to his daughters in the role of a sole custodial parent." In his third report, dated December 20, 2002, Dr. Hartings evaluated both parties and their children, and recommended that Father be awarded custody of the parties' remaining minor child.

{¶ 4} In 2004, the trial court issued a parenting decree designating Father as the residential parent of the parties' remaining minor child, granting Mother visitation with the child, and ordered Mother to pay child support to Father. This court affirmed the trial court's

decision to name Father as the residential parent of the parties' minor child. *Wilkerson v. Wilkerson*, 12th Dist. Butler Nos. CA2004-02-043, CA2004-02-046, 2005-Ohio-1236, ¶ 11, 24.

{¶ 5}  In 2005, Dr. Hartings was disciplined by the Ohio State Board of Psychology (OSBP) for the opinions he issued in the parties' divorce proceedings that culminated in the 2004 parenting decree. The OSBP and Dr. Hartings reached a consent agreement in which Dr. Hartings admitted to being negligent in rendering an opinion in his April 24, 2002 report that stated Mother "engages in alienating behaviors and that she had a moderate to severe personality disorder of the 'histrionic, borderline, or schizotypal type[,]'" without having first met and evaluated her. Dr. Hartings also admitted to being negligent in rendering an opinion about Father in his April 28, 2002 report in which he stated that Father "is capable of parenting his daughters in the role of 'sole custodial parent[,]'" without having first met Mother and the children. Dr. Hartings agreed to a "permanent practice restriction" that prohibits him from "rendering in writing or by testimony any hypotheses, impressions, diagnostic suppositions, and other professional opinions or recommendations relative to the allocation of parental rights and responsibilities, parenting time, or parental capacity in any court or before any adjudicative body in the State of Ohio."

{¶ 6}  In 2008, Mother filed a motion to modify the shared parenting plan, in which she indicated an awareness of the 2005 disciplinary proceedings against Dr. Hartings. Specifically, Mother stated that the shared parenting plan "was issued as a result of the Court's reliance upon Dr. Michael H. [sic] Hartings, Ph.D., who provided fraudulent and inaccurate information to the Court, which information was relied upon by the Court in the determination of the Shared Parenting Plan." The trial court overruled the motion, and this court upheld the trial court's decision on appeal. *Wilkerson v. Wilkerson*, 12th Dist. Butler No. CA2009-07-189 (Feb. 1, 2010) (Accelerated Calendar Judgment Entry).

{¶ 7} In 2012, Mother filed the Civ.R. 60(B)(5) motion for relief from the 2004 parenting decree, which forms the basis of the current appeal. Mother argued in her Civ.R. 60(B)(5) motion that Dr. Hartings committed a "fraud on the court" as a result of the expert testimony he gave at the proceedings that culminated in the 2004 parenting decree. Mother also filed motions to establish a child support "overpayment" and a child support "arrears," alleging that as result of Dr. Hartings' fraud, she had overpaid child support and was thus entitled to be reimbursed for the overpayment by Father.

{¶ 8} The magistrate denied Mother's Civ.R. 60(B)(5) motion, determining that Mother did not have a meritorious claim or defense to present if relief was granted, that Mother was not entitled to relief under any of the grounds set forth in Civ.R. 60(B)(1)-(5), and that Mother's Civ.R. 60(B)(5) motion was not filed within a reasonable time. The magistrate also determined that Father was entitled to $2,062.50 in attorney fees and costs under R.C. 2323.51. The trial court affirmed the magistrate's decision and adopted it as its own.

{¶ 9} Mother now appeals and assigns the following as error:

{¶ 10} THE TRIAL COURT ABUSED ITS DISCRETION, DENIED DEFENDANT-APPELLANT DUE PROCESS, WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT, OR ENGAGED IN PLAIN ERROR IN OVERRULING HER OBJECTION(S) TO THE DECISION OF MAGISTRATE. [sic]

{¶ 11} Mother argues the trial court abused its discretion, denied her due process, went against the manifest-weight-of-the-evidence, erred to her prejudice or engaged in plain error by failing to apply the "reasonable time" language of Civ.R. 60(B)(5) to vacate the 2004 parenting decree and by finding that it lacked jurisdiction to establish child support arrears that accrued prior to the emancipation of the minor child.

{¶ 12} To prevail on a Civ.R. 60(B) motion for relief from judgment, the moving party

must demonstrate that it (1) has a meritorious claim or defense to present if the motion is granted; (2) is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) has made the motion within a reasonable time, and, where the grounds for relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken. *Aurora Loan Servs. v. Brown*, 12th Dist. Warren Nos. CA2010-01-010 and CA2010-05-041, 2010-Ohio-426, ¶ 35, citing *GTE Automatic Elec. v. ARC Industries*, 47 Ohio St.2d 146, 150-151 (1976).

{¶ 13} A motion for relief from judgment under Civ.R. 60(B) is committed to the sound, though not unlimited, discretion of the trial court. *In re Whitman*, 81 Ohio St.3d 239 (1998). A trial court's decision on discretionary matters is not to be reversed unless the decision is arbitrary, unconscionable or unreasonable. *AAAA Ent., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). A trial court's decision is unreasonable if there is no sound reasoning process that would support it. *Id.*

{¶ 14} Mother's principal contention throughout these proceedings is that she was entitled to relief from the 2004 parenting decree under the catch-all provision in Civ.R. 60(B)(5), which allows a court to vacate a prior judgment for "any other reason justifying relief from the judgment[.]" She points out, correctly, that "fraud on the court" is one of the grounds for relief that may be used to vacate a judgment under Civ.R. 60(B)(5). *Coulson v. Coulson*, 5 Ohio St.3d 12, 15 (1983). She asserts that Dr. Hartings' opinion testimony in the parties' divorce proceedings, for which he was sanctioned by the OSBP, amounted to a "fraud on the court" that should have entitled her to relief from the 2004 parenting decree.

{¶ 15} "It is generally agreed that ' * * * [a]ny fraud connected with the presentation of a case to a court is a fraud upon the court, in a broad sense.'" *Coulson*, citing 11 Wright & Miller, Federal Practice and Procedure (1973) 253, Section 2870. Civ.R. 60(B)(3) provides that "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other

misconduct of an adverse party" are among the reasons that may relieve a party from a final judgment. Thus, "in the usual case" a party complaining of fraud must resort to a motion under Civ.R. 60(B)(3), in order to obtain relief. *Coulson*. However, "[w]here an officer of the court, *e.g.*, an attorney, * * * actively participates in defrauding the court, then the court may entertain a Civ.R. 60(B)(5) motion for relief from judgment." *Id.*, citing *Toscano v. Commr. of Internal Revenue* (C.A.9, 1971), 441 F.2d 930, 933.

{¶ 16} The *Coulson* court defined "fraud on the court" as follows:

> "Fraud upon the court" is an elusive concept. "The distinction between 'fraud' on the one hand and 'fraud on the court' on the other is by no means clear, and most attempts to state it seem to us to be merely compilations of words that do not clarify." *Toscano* [* * *].

> One commentator, however, had provided this definition: "'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud, *inter partes*, without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b)(3) or to the independent action." 7 Moore's Federal Practice (2 Ed.1971) 515, Paragraph 60.33. See, also, *Serzysko v. Chase Manhattan Bank* (C.A.2, 1972), 461 F.2d 699; *Kupferman v. Consolidated Research & Mfg. Corp.* (C.A.2, 1972), 459 F.2d 1072, 1078; *Kenner v. Commr. of Internal Revenue* (C.A.7, 1968), 387 F.2d 689, 691. Accord *Hartford v. Hartford* (1977), 53 Ohio App.2d 79, at pages 83-84, 371 N.E.2d 591.

{¶ 17} In *Hartford* at 84, the Eighth District Court of Appeals stated that "[e]xamples of fraud on the court justifying relief from judgment would include such 'egregious misconduct' as bribery of a judge or jury, or fabrication of evidence by counsel [citations omitted] or the prevention of an opposing party from presenting his case." (Citations omitted.)

{¶ 18} Here, Mother argues that Dr. Hartings' "fraudulent testimony" qualifies as a "fraud on the court" that should have entitled her to relief from the 2004 parenting decree under Civ.R. 60(B), because (1) it prevented her from fairly presenting her case; (2) Dr.

Hartings "stands at a level at least equivalent to that of an 'officer of the court,' [sic] insofar as the far-reaching effects his false or fabricating evidence had in *preventing the judicial system from functioning in the customary manner of deciding the cases presented in an impartial manner*[,]"; (3) even though she did not file her Civ.R. 60(B)(5) motion until nearly eight years after the 2004 parenting decree was issued, she nevertheless filed the motion in a reasonable time, given, among other things, her difficulty with the English language; (4) the trial court relied heavily on Dr. Hartings' testimony in arriving at its determination of the parties' parental rights and responsibilities in the 2004 parenting decree. (Emphasis sic.)

{¶ 19} Initially, Dr. Hartings is not an "officer of the court," nor can he be deemed analogous to one as Mother claims. The term "officer of the court" means "[a] person who is charged with upholding the law and administering the judicial system[;] [t]ypically, *officer of the court* refers to a judge, clerk, bailiff, sheriff, or the like, but the term also applies to a lawyer, who is obliged to obey court rules and who owes a duty of candor to the court." (Italics sic.) Black's Law Dictionary 1119 (8th Ed. 2004).

{¶ 20} Here, the trial court appointed a psychologist, Dr. Lee, to evaluate the parties and their children. Dr. Lee issued a report recommending treatment for all family members, particularly the parties' younger child, and shared parenting of the parties' children despite both parents' objections. While Dr. Lee, as a court-appointed psychologist, might be deemed to be an "officer of the court," Dr. Hartings could not be. Dr. Hartings was not appointed by the trial court but, instead, was hired by one of the parties in the action, namely, Father, to testify on Father's behalf as an expert witness, and therefore Dr. Hartings does not qualify as an "officer of the court."

{¶ 21} Additionally, Dr. Hartings' misconduct, assuming that it rises to the level of "fraud," does not qualify as "fraud on the court," as defined in *Coulson*, 5 Ohio St.3d at 15. In *Coulson*, the Ohio Supreme Court narrowly defined "fraud on the court" to "'embrace only

that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'" *Id.*, quoting 7 Moore's Federal Practice (2Ed.1971) 515, Paragraph 60.33.

{¶ 22} Dr. Hartings' misconduct was of a serious nature as he rendered psychological opinions about Mother in his April 24, 2002 report and about Father in his April 28, 2002 report, without obtaining "substantial professional client information" on them. Particularly troubling was his failure to meet with Mother and evaluate her before issuing his April 24, 2002 report in which he opined that Mother engages in "alienating behaviors" and "had a moderate to severe personality disorder of the 'histrionic, borderline, or schizotypal type.'" However, we do not view Dr. Hartings' misconduct in this case as being equivalent to "that species of fraud which does or attempts to, defile the court itself," or as constituting the type of fraud that prevents the "the judicial machinery" from "perform[ing] in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Coulson.*

{¶ 23} Expert witnesses like Dr. Hartings do not provide testimony that is any more vital than that provided by lay witnesses. Our system makes allowances for untruthful testimony, which include the rules of cross-examination, impeachment, and making the trier of fact primarily responsible for determining the credibility of witnesses. The "judicial machinery" does not always function perfectly. However, we believe that in this case, the judicial machinery functioned well enough to allow the trial court to "perform in the usual manner its impartial task of adjudging" the parenting issues presented to it "for adjudication" despite Dr. Hartings' misconduct. *Coulson.*

{¶ 24} In *Wilkerson v. Wilkerson*, 12th Dist. Butler Nos. CA2004-02-043, CA2004-02-046, 2005-Ohio-1236, ¶ 19-20, this court noted that the trial court gave "considerable weight" to Dr. Hartings' report in making the best interest determination with respect to which of the

parties should be named residential parent of their remaining minor child and that we would not second-guess the trial court's decision in evaluating the evidence and assessing the credibility of the witnesses. Dr. Hartings' misconduct may appear to call this determination into question. However, it must be remembered that the OSBP sanctioned Dr. Hartings for not obtaining "substantial professional client information" on Mother and Father before he issued professional, psychological opinions on them. By the time he made his final report on December 20, 2002, Dr. Hartings had met with and evaluated Mother and the parties' two children, in addition to Father. Likewise, by the time it made its final parenting determination, the trial court had access to all three of Dr. Hartings' reports, including his final report of December 20, 2002, which Dr. Hartings issued *after* he met with both parties and their two minor children.

{¶ 25} Additionally, Dr. Hartings acknowledged in his April 28, 2002 report evaluating Father's fitness to be a parent that "[t]his evaluation falls short of a full custody evaluation because I have not had an opportunity to interview or examine [Mother] nor have I had an opportunity to interview and examine the children." Thus, Mother and her counsel knew, by the time of the April 30, 2003 hearing held on the allocation of parental rights and responsibilities that Dr. Hartings had not met with or evaluated Mother or the parties' minor children at the time Dr. Hartings issued his April 24, 2002 report. In fact, during her cross-examination of Dr. Hartings at the April 30, 2003 hearing, Mother's attorney was able to call attention to the fact that Dr. Hartings had determined in his April 28, 2002 report that Father was "quite suitable and capable of parenting to his daughters in the role of a sole custodial parent," even though Dr. Hartings had not yet met Mother or the parties' children by the time he issued that report, thereby suggesting that Dr. Hartings had formulated his opinion on Father's parenting abilities in an unfair manner. While this fact did not prevent the trial court from naming Father, rather than Mother, as residential parent of their remaining minor child,

the record shows that the reason for the trial court's decision was attributable to more than Dr. Hartings' misconduct.

{¶ 26} In *Wilkerson*, 2005-Ohio-1236 at ¶ 19, this court noted that while the trial court "did give considerable weight to Dr. Michael Hartings' report in making the best interest determination," the trial court "also considered the appropriate factors as required by R.C. 3109.04(F)(1)," and we determined that competent, credible evidence supported the trial court's findings. We further noted in *Wilkerson* at ¶ 21 that the trial court also considered the guardian ad litem's recommendation that Father be named the residential parent of the parties' children. Mother asserts that the GAL's report is "tainted" because the GAL expressly relied on Dr. Hartings' report. However, in his report, the GAL expressly disagreed with Dr. Hartings' conclusion regarding the existence of "Parental Alienation Syndrome":

> This guardian finds the report of Dr. Hartings to be interesting regarding his conclusions * * * to the effect that Parental Alienation Syndrome may exist due to [Mother's] continued attempts to undermine [Father]. Although this guardian certainly shares a concern about [Mother's] repeated and continued efforts to downgrade [Father], this guardian cannot share the conclusion that there may be Parental Alienation Syndrome in this case. If anything, [Mother's] ongoing statements regarding [Father] have had the opposite effect. * * * [S]he has essentially alienated herself from [the parties' older child] to such an extent that the two can barely stand to be civil to each other. [The younger child] is much more neutral, but this guardian has observed an excellent bond between [the younger child] and [Father] and has seen no signs that she feels alienated from him.

A careful review of the GAL's report refutes any suggestion that it was somehow "tainted" by Dr. Hartings' misconduct.

{¶ 27} We pointed out in *Wilkerson* that the trial court noted that, in addition to Mother's allegations of abuse throughout the marriage, she also expressed her belief that if Father is granted custody of their children, he might rape or kill them. *Id.* at ¶ 23. However, the trial court found that despite these serious allegations, there was no evidence that Father

had ever been a threat to their children. *Id.* We also noted in *Wilkerson* that "[t]hroughout this case," Mother "repeatedly claimed that the attorneys, the court, and the guardian ad litem are working against her or working with the devil." *Id.* at ¶ 22, fn. 2.

{¶ 28} Admittedly, Dr. Hartings' actions were not declared to constitute professional misconduct by the OSBP before the trial court made its determination as to which of the parties should be the residential parent of their remaining minor child. However, as demonstrated by the facts set forth above, it is clear that the trial court did not rely exclusively on Dr. Hartings' expert testimony in arriving at its decision on this issue in its 2004 parenting decree.

{¶ 29} In addition to the foregoing, Mother failed to file her Civ.R. 60(B)(5) motion within a "reasonable time" after the 2004 parenting decree was entered. In *Taylor v. Haven*, 91 Ohio App.3d 846, 852 (12th Dist. Butler 1993), this court stated that it was "not prepared to hold that a twelve-year interval between a final judgment and a movant's Civ.R. 60(B) motion is *per se* unreasonable." We advised that "[a] trial court should consider such factors beyond the absolute length of time" taken by the movant to file the Civ.R. 60(B) motion, including "the burden on the nonmoving party of asserting its claim" if Civ.R. 60(B) relief is granted and "the movant's degree of fault in not bringing the motion sooner." *Id.*

{¶ 30} Here, notwithstanding our statement in *Taylor* that a 12-year delay in filing a motion under Civ.R. 60(B)(4) or (5) is not *per se* unreasonable, there is a high degree of fault attributable to Mother for not filing her Civ.R. 60(B)(5) motion for relief from the 2004 parenting decree sooner than she did. Mother first learned of Dr. Hartings' fraud in 2005 when she received, through her counsel, a copy of the consent agreement between Dr. Hartings and OSBP. However, Mother did not seek relief from the 2004 parenting decree on the basis of Dr. Hartings' misconduct until 2012 when she filed the Civ.R. 60(B)(5) motion for relief from that judgment. Additionally, Mother did not file her motion for relief from judgment

until after the parties' younger child had reached the age of majority. This is a critical factor in determining if a motion for relief from a judgment establishing child support was brought within a reasonable time. Mother's motion was not timely whether subject to the time period for motions for relief from judgment under Civ.R. 60(B)(3), which requires such motions to be brought within a "reasonable time" and no later than one year after the judgment was entered, or the time period for motions for relief from judgment under Civ.R. 60(B)(5), which requires simply that such motions be brought within a "reasonable time." We conclude that Mother failed to file her Civ.R. 60(B)(5) motion within a reasonable time under the circumstances of this case.

{¶ 31} In light of the foregoing, Mother's assignment of error is overruled.

{¶ 32} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.