[Cite as *Motorists Mut. Ins. Co. v. Roberts*, 2014-Ohio-1893.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| MOTORISTS MUTUAL INSURANCE CO., | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-09-089 |
| | : | O P I N I O N |
| - vs - | : | 5/5/2014 |
| | : | |
| CODY ROBERTS, et al., | : | |
| Defendants-Appellant. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT
Case No. 2010CVE00315

Zeehandler Sabatino & Associates, LLC, Stephen J. Zeehandelar, 471 East Broad Street, Suite 1200, Columbus, Ohio 43215-0069, for plaintiff-appellee

Thomas G. Eagle Co., L.P.A., Thomas G. Eagle, 3386 North State Route 123, Lebanon Ohio 45036, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Cody Roberts, appeals a decision from the Warren County Court denying his motion for relief from and to vacate a default judgment entered in favor of plaintiff-appellee, Motorists Mutual Insurance Company, Inc. (Motorists Mutual). For the reasons discussed below, we affirm in part, reverse in part, and remand this matter to the trial court.

{¶ 2} On or about January 31, 2009, a motor vehicle owned by an insured of Motorists Mutual was stolen. The vehicle was later recovered, but it was damaged. On March 29, 2010, Motorists Mutual filed a complaint in the Warren County Court against Roberts and a co-defendant, Leslie Andrew Shaw, asserting its subrogation rights to recover funds it paid to its insured.[1] The complaint alleged that Roberts and Shaw, "while on a joint venture * * * stole a 1997 Mercury Mystique off of the Insured's lot and engaged in the unauthorized use of said vehicle." Thereafter, as Roberts had not answered or appeared, Motorists Mutual moved for default judgment. On September 15, 2010, default judgment was entered against Roberts in the amount of "$1,932.05, plus costs and interest at the statutory rate of 4%."

{¶ 3} Over two years later, on March 12, 2013, Roberts filed a motion for relief from and to vacate default judgment. In his motion, Roberts claimed the judgment against him was void as he had never been served with the summons and complaint and that he was entitled to relief under Civ.R. 60(B)(5), for "any other reason justifying relief from judgment." In support of the motion, Roberts attached his affidavit, wherein he averred he was not involved in the theft or damage of the insured's vehicle. He indicated that he had been charged criminally for his alleged involvement in the theft of the vehicle but that the charges were dismissed by the state and never refiled. *See State v. Roberts*, Warren C.C. No. 2009-CRA-00116 (Mar. 5, 2009). Roberts further claimed he was never aware of the default judgment entered against him. According to Roberts, he did not discover the September 15, 2010 judgment had been rendered against him until January 23, 2013, when he was pulled over and informed that his license was under suspension due to a "judgment suspension." As to the issue of service, Roberts stated he never received "notice or summons of the

_____

1. Shaw is not a party to the present appeal.

- 2 -

complaint in this case," and if he had, he "would have defended it on the merits."

{¶ 4} Motorists Mutual filed a memorandum in opposition claiming that service was perfected by ordinary mail, and that Roberts' affidavit was insufficient to overcome the presumption of proper service. Motorists Mutual also claimed Roberts' motion for relief from judgment was not filed within a reasonable time as he had "spoken with personnel in the office of [Motorists Mutual's] counsel" about the judgment and license suspension on numerous occasions. Attached to the memorandum were unauthenticated copies of an "Accurint" report, listing contact information for "Cody Roberts" and the Springboro Police Department's investigative notes as to the theft of the insured's vehicle.

{¶ 5} Based on the filings by the parties, the trial court scheduled an evidentiary hearing on the limited issue of Roberts' contact with counsel's office in 2010, 2011, 2012, and 2013 concerning the judgment. At the hearing, Motorists Mutual presented the testimony of Kris Stephenson, a 15-year employee and accounting manager for Zeehandelar, Sabatino & Associates, LLC, the law firm representing Motorists Mutual in the present action. Stephenson testified regarding the firm's electronic recording-keeping practices. Stephenson explained that the firm uses a program called, "Collection Partner" which permits the person handling a debtor's account to place typewritten notes in the electronic file under the debtor's name. Over Roberts' objections, Motorists Mutual entered as an exhibit a printout from "Collection Partner" which pertained to Roberts' account at the firm. Based on this exhibit, Stephenson testified Roberts engaged in a series of conversations with several account handlers from November 19, 2010 through January 29, 2013 regarding the judgment against him. The record indicated Roberts' license was suspended on November 2, 2010, and on November 19, 2010, "D" or "DB", which referred to Roberts, contacted the firm and indicated that he was going to contact an attorney. Stephenson further testified that an entry on October 22, 2012, indicated Roberts called the office and spoke with an account

- 3 -

representative, stating he was "tired of fighting, he just wanted to get his driver's license back." Several of the entries also indicated that the account representatives had provided Roberts with a case number during the conversation.

{¶ 6} Roberts also testified at the hearing. He denied ever contacting the law firm representing Motorists Mutual. He acknowledged that the exhibit reflected his name, date of birth, and social security number, but otherwise denied several of the facts contained in the record. For instance, Roberts denied recognizing any of the phone numbers where these calls allegedly originated, and he also denied ever working at AK Steel, the place of employment listed in the record.

{¶ 7} After the parties submitted post-hearing briefs, the magistrate denied Roberts' motion finding he was properly served by ordinary mail. The magistrate further found Roberts had notice of the judgment based upon his various contacts with the law firm, and therefore concluded the Civ.R. 60(B)(5) motion was not brought within a reasonable time. Roberts filed objections to the magistrate's decision with the trial court. Upon review, the trial court affirmed and adopted the magistrate's decision to deny Roberts' motion for relief from and to vacate the default judgment.

{¶ 8} Roberts appeals the decision of the trial court, presenting three assignments of error for our review. For ease of discussion, we address Roberts' assignments of error out of order.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF PLAINTIFF'S LAWYER'S EMPLOYEES' NOTES.

{¶ 11} In his first assignment of error, Roberts argues the trial court erred in admitting into evidence Exhibit 1, records of Roberts' alleged contacts, including telephone conversations, with the attorneys representing Motorists Mutual. Roberts contends the

records were not admissible under Evid.R. 803(6) because they were prepared in anticipation of litigation, rather than in the ordinary course of business.

{¶ 12} The admission or exclusion of relevant evidence rests within the discretion of the trial court. *League v. Collins*, 12th Dist. Butler No. CA2013-03-041, 2013-Ohio-3857, ¶ 8. An appellate court will not disturb a decision of the trial court to admit or exclude evidence absent a clear and prejudicial abuse of discretion. *Cottrell v. Cottrell*, 12th Dist. Warren No. CA20120-10-105, 2013-Ohio-2397, ¶ 80. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 13} Generally, out-of-court statements offered to prove the truth of the matter asserted are inadmissible hearsay. Evid.R. 801(C). However, Evid.R. 803(6) provides an exception to this general rule of inadmissibility for certain business records. To qualify for admission under Evid.R. 803(6):

> a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the custodian of the record or by some other qualified witness.

*Green Tree Servicing, L.L.C. v. Roberts*, 12th Dist. Butler No. CA2013-03-039, 2013-Ohio-5362, ¶ 29, quoting *Cent. Mtge. Co. v. Bonner*, 12th Dist. Butler No. CA2012-10-204, 2013-Ohio-3876, ¶ 13; *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 171. Even after the above elements are established, a business record may be excluded from evidence if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *State v. Glenn*, 12th Dist. Butler No. CA2009-01-008, ¶ 17, quoting *Davis* at ¶ 171. Firsthand knowledge of the transaction is not required by the witness providing the foundation; however, the witness must demonstrate he is sufficiently familiar with the

operation of the business and the record's preparation, maintenance, and retrieval such that he can reasonably testify as to the basis of his knowledge. *Glenn* at ¶ 19.

{¶ 14} In the case at hand, Stephenson testified that as an accounting manager for Zeehandelar, Sabatino and Associates, he had personal knowledge of the firm's record-keeping system. Stephenson identified Exhibit 1 as a "printout copy of [an] * * * electronic file that is kept during the course of business for our firm for this particular case involving [Motorists Mutual] and Mr. Roberts." Stephenson explained it is the practice of the firm to make this type of record for each collection and litigation case in order to keep track of the history of the case. According to Stephenson, the records are created by a software program called "Collection Partner," and when activity occurs on a particular file, such as a telephone conversation or other correspondence with a debtor, notes are entered into the file to reflect such activity. Stephenson testified these notes are made by the person who actually engages in the activity reflected in the entry and that such notes are made immediately after the event or activity takes place. Stephenson further testified that at midnight on the day the note was entered, the note on the file becomes permanent and can no longer be changed or edited.

{¶ 15} Based on this testimony, we do not find that the trial court abused its discretion in admitting the law firm's records. Stephenson's testimony met each of the requirements under the business records exception to the hearsay rule. Stephenson explained that Exhibit 1 contains records that are regularly made in the course of the law firm's business activity; the records are made by persons with knowledge of the act and close in time to the event recorded. Finally, Stephenson as the accounting manager, and an employee who has created similar records before and reviewed the records presented to the trial court, had the requisite knowledge to testify regarding these records.

{¶ 16} Roberts, however, asserts Exhibit 1 was still inadmissible as the records were

made and kept in anticipation of litigation and therefore indicated a lack of trustworthiness. Roberts is correct that in some instances, documents made in anticipation of litigation are excluded because such documents substantially undermine the presumed guarantee of circumstantial trustworthiness in qualified business records. *See Sikora v. Gibbs*, 132 Ohio App.3d 770, 776 (10th Dist.1999), citing *McCormick v. Mirrored Image, Inc.*, 7 Ohio App.3d 232, 234 (1st Dist.1982); *see also Weis v. Weis*, 147 Ohio St. 416, 426 (1947). However, we disagree that simply because these records were prepared at an attorney's office that such records were created in anticipation of litigation, and therefore were not trustworthy. Rather, according to Stephenson's testimony, these records served a dual purpose, one was for litigation, but the other was for the firm's collection business. The records at issue reflected phone calls between office personnel and debtors who were attempting to resolve the matters voluntarily. The records had significance separate and apart from the law firm's litigation business. The records were not evaluative, but instead recorded contacts the firm had with its clients' debtors. Moreover, as a judgment had already been entered against Roberts and nothing further in the case was pending before the trial court when these records were made, it is reasonable to conclude that the records were not created in anticipation of litigation. Accordingly, under these facts, we do not find the circumstances of preparation indicate a lack of trustworthiness.

{¶ 17} Based on the foregoing, the trial court did not err in admitting into evidence records of the law office representing Motorists Mutual, and therefore, Roberts' first assignment of error is overruled.

{¶ 18} Assignment of Error No. 3:

{¶ 19} THE TRIAL COURT ERRED IN DENYING ROBERTS' MOTION FOR RELIEF FROM THE JUDGMENT UNDER CIV.R. 60(B).

{¶ 20} In his third assignment of error, Roberts asserts the trial court erred in denying

his motion for relief from judgment under Civ.R. 60(B) as there was evidence of "lack of actual service." Roberts contends he has a meritorious defense if relief is granted, the motion was timely, and that he was entitled to relief under Civ.R. 60(B)(5) based on the court's "inherent power to relieve a person from the unjust operation of a judgment."

{¶ 21} Our standard of review of a court's decision as to whether to grant a Civ.R. 60(B) motion is abuse of discretion. *First Fin. Bank, N.A. v. Grimes*, 12th Dist. Butler No. CA2010-10-268, 2011-Ohio-3907, ¶ 14. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 22} To prevail on a Civ.R. 60(B) motion for relief from judgment, the moving party must demonstrate that it (1) has a meritorious claim or defense to present if the motion is granted; (2) is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) has made the motion within a reasonable time, and, where the grounds for relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken. *Aurora Loan Servs. v. Brown*, 12th Dist. Warren Nos. CA2010-01-010 and CA2010-05-041, 2010-Ohio-5426, ¶ 35, citing *GTE Automatic Elec. v. ARC Industries*, 47 Ohio St.2d 146, 150-151 (1976); *see also Wilkerson v. Wilkerson*, 12th Dist. Butler No. CA2013-06-089, 2014-Ohio-1322, ¶ 12. Failing to meet one of the *GTE* factors is fatal, for all three must be satisfied in order to gain relief. *Grimes* at ¶ 14. In the present case, the trial court denied Roberts' Civ.R. 60(B) motion for relief from judgment on the basis that Roberts failed to bring the motion within a reasonable time. What constitutes reasonable time depends upon the facts of the case. *L.N.V. Corp. v. Edgar*, 12th Dist. Butler No. CA2011-10-190, 2012-Ohio-1899, ¶ 22.

{¶ 23} In response to Roberts' motion for relief, Motorists Mutual asserted Roberts contacted the law firm representing Motorists Mutual and spoke to personnel at the office in

2010, 2011, 2012, and 2013. Based on this allegation, the trial court held an evidentiary hearing "relating to contact with [Motorists Mutual's attorney's] office by the Defendant." As mentioned above, Stephenson testified at the hearing regarding the company's records and explained that entries in those records indicated Roberts had engaged in conversations with several account handlers over a period of time about the judgment against him. Roberts also testified at the hearing and denied ever contacting the law firm or being aware of the judgment against him. In light of Roberts' contact with the law firm, the trial court found Roberts was aware of the judgment against him. In reaching this conclusion, the trial court also rejected Roberts' testimony that he had never contacted the law firm and was unaware of the judgment. Accordingly, the trial court denied Roberts Civ.R. 60(B) motion finding he did not file the motion within a reasonable time after becoming aware of the default judgment.

{¶ 24} Roberts asserts that even if he had notice of a collection effort, his motion was timely as it was made "within weeks" of finding out about *the judgment* against him. However, the trial court elected to believe the testimony of Stephenson and the records presented by Motorists Mutual over Roberts' claims. We find no abuse of discretion in this regard. Accordingly, Roberts' inability to demonstrate the timeliness of his motion is fatal to his claim for relief under Civ.R. 60(B). *See Grimes*, 2011-Ohio-3907 at ¶ 14. It is therefore unnecessary to determine whether there is a substantive basis for relief from judgment based upon a failure of actual service of the summons and complaint.

{¶ 25} Roberts' third assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ERRED IN DENYING ROBERTS' MOTION TO VACATE THE JUDGMENT DUE TO LACK OF SERVICE.

{¶ 28} In his second assignment of error, Roberts argues the trial court erred in denying his motion to vacate the default judgment because he was not properly served with

the complaint and summons in this matter. Roberts contends that as a result of Motorists Mutual's failure to perfect service, the trial court did not have personal jurisdiction over him, and therefore the judgment against him is void.

{¶ 29} "In order to render a valid judgment, a court must have jurisdiction over the defendant in the action." *Beachler v. Beachler*, 12th Dist. Preble No. CA2006-03-007, 2007-Ohio-1220, ¶ 12. A court may acquire personal jurisdiction over the defendant either by service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction of the court. *Id.*, citing *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984). "If a plaintiff fails to perfect service on a defendant and the defendant has not appeared in the action or waived service, a trial court lacks the jurisdiction to enter a default judgment against the defendant." *Ohio State Aerie Fraternal Order of Eagles v. Alsip*, 12th Dist. Butler No. CA2013-05-079, 2013-Ohio-4866, ¶ 10, quoting *Bendure v. Xpert Auto, Inc.*, 10th Dist. Franklin No. 11AP-144, 2011-Ohio-6058, ¶ 16.

{¶ 30} A judgment rendered by a court that has not acquired personal jurisdiction over the defendant is void, not merely voidable. *Alsip* at ¶ 10; *see also In re B.P.H.*, 12th Dist. Butler No. CA2006-04-090, 2007-Ohio-1366, ¶ 14 ("[w]here service of process has not been accomplished, any judgment rendered is void ab initio"). A party seeking to challenge a void judgment must file a motion to vacate or set aside the judgment. *Beachler* at ¶ 18. The trial court's power to vacate a void judgment does not arise under Civ.R. 60(B), as such motions only apply to set aside voidable judgments. *Id.* Rather, an Ohio court has the inherent power to vacate a void judgment. *BAC Home Loans, LP v. Mapp*, 12th Dist. Butler No. CA2013-01-001, 2013-Ohio-2968, ¶ 11, citing *Patton v. Diemer*, 35 Ohio St.3d 68 (1988), paragraph four of the syllabus. "An appellate court reviews the denial of a common law-motion to vacate

- 10 -

under an abuse of discretion standard." *Alsip* at ¶ 10.

**{¶ 31}** As a motion to vacate a void judgment does not need to satisfy the requirements under Civ.R. 60(B), Roberts was not required to show that his motion to vacate was timely filed. Rather, what is at issue in the present case is whether the trial court obtained personal jurisdiction over Roberts by service of process.

**{¶ 32}** Service of process is consistent with due process standards where it is reasonably calculated, under the circumstances, to give interested parties notice of a pending action and an opportunity to appear. *Hamilton v. Digonno*, 12th Dist. Butler No. CA2005-03-075, 2005-Ohio-6552, ¶ 9, citing *Samson Sales, Inc. v. Honeywell, Inc.*, 66 Ohio St.2d 290, 293 (1981). Civ.R. 4.1 outlines the methods of obtaining service of process within the state of Ohio, and it provides that "service of any process shall be by United States certified or express mail unless otherwise permitted by these rules." Proper service of process by certified mail is "[e]videnced by [a] return receipt signed by any person." *Alsip* at ¶ 11, quoting Civ.R. 4.1(A). Civ.R. 4.6(D) permits service to be made by ordinary mail if the attempted service by certified mail is returned unclaimed, and provides that "[s]ervice shall be deemed complete when the fact of mailing is entered of record, provided that the ordinary mail envelope is not returned by the postal authorities with an endorsement showing failure of delivery." *HSBC Mtge v. Ballard*, 12th Dist. Butler No. CA2011-05-088, 2012-Ohio-2251, ¶ 8. If the ordinary mail envelope is not returned, there is a presumption that service has been perfected. *Hamilton* at ¶ 10. However, such presumption is rebuttable by sufficient evidence. *Id.*; *see, e.g., Barnhart v. Sonny Emrick Excavating*, 12th Dist. Fayette No. CA95-06-016, 1995 WL 746236 (Dec. 18, 1995); *Patterson v. Patterson*, 8th Dist. Cuyahoga No. 86282, 2005-Ohio-5352, ¶ 23.

**{¶ 33}** In the present case, Motorist Mutual filed its complaint on March 29, 2010. A copy of the summons and complaint were sent by certified mail to Roberts at 952 Dubois

Road, Franklin, OH 45005. It was returned "unclaimed." Thereafter, upon request, service was reissued to Roberts by ordinary mail at the Dubois Road address on May 28, 2010. There is no evidence in the record that the ordinary mail envelope was returned by the postal authorities with an endorsement showing failure of delivery. Therefore, there is a rebuttable presumption that service was perfected.

{¶ 34} Essentially, Roberts asserts that his affidavit presented sufficient evidence of nonservice. Roberts attached his own affidavit to the motion to vacate, wherein he asserted "[a]t no time did I receive notice or summons of the complaint in this case and it was apparently sent to an incorrect address." He further averred that he did not live at the Dubois Road address at the time, but rather resided on Franklin-Trenton Road until 2011. Roberts also asserted that the complaint and summons could have been sent to his mother's residence at 3916 Kenny Lane, Springboro, Ohio, where the criminal complaints were served.

{¶ 35} In response, Motorist Mutual filed a printout from "Accurint" which it asserted is "routinely utilized in this industry to locate persons." The report listed various addresses for "Cody Roberts" including both the Kenny Road address and the Dubois Road address. This report was not authenticated by a necessary affidavit. Motorist Mutual argued that this report indicated Roberts resided at the Dubois address when service was perfected, and therefore his affidavit failed to rebut the presumption of proper service. However, as the "Accurint" report was unauthenticated, we find that this document alone was insufficient to refute Roberts' claims of nonservice. *See Whittle v. Davis*, 12th Dist. Butler No. CA2013-08-153, 2014-Ohio-445, ¶ 24; Evid.R. 104(A).

{¶ 36} In addition, other evidence in the record suggests Roberts may not have resided at the Dubois address where he was served. Motorists Mutual filed certified copies of several records from the Ohio Registrar of Motor Vehicles with its post-hearing brief.

- 12 -

These records indicate that for much of the relevant time period, Roberts reported his address as 3916 Kenny Lane. In early 2007 and 2008, Roberts did report a Dubois Road Court address, however, it was a different house number than where the summons and complaint were sent in this case. Moreover, as noted by Roberts, the notice of the default judgment hearing, as well as the entry granting default judgment were sent by ordinary mail to the Dubois Court address, but were later returned by the postal authorities as "not deliverable." These documents were sent in August and September 2010, just a few months after service was sent by ordinary mail in May 2010.

{¶ 37} We find that Roberts' affidavit and the documentary evidence in this case created a factual issue as to whether the court had jurisdiction over Roberts at the time default judgment was entered. The conflicting evidence should have been resolved by an evidentiary hearing. *See Patterson v. Patterson*, 8th Dist. Cuyahoga No. 86282, 2005-Ohio-5352, ¶ 23 (party's contention that he resides at different address than where summons was sent warranted hearing on whether rebuttable presumption of proper service arising when serving party complies with Civ.R. 4.6(D) had been rebutted). The trial court's decision denying Roberts' motion to vacate the void judgment only found that service was perfected based on the fact that "certified mail service was returned unclaimed and ordinary mail service was then perfected and not returned." However, the fact that ordinary mail service was not returned only created a presumption of perfected service, but such presumption is rebuttable. The trial court failed to address whether Roberts had rebutted the presumption of perfected service. Based on the record before us, we find there was conflicting evidence on the issue of service which should have been resolved by an evidentiary hearing.

{¶ 38} Motorists Mutual contends the trial court's finding that Roberts' testimony at the hearing was not credible similarly permitted a finding that his affidavit as to service was not credible. We reject such an argument. As mentioned above, it is clear from the record that

the court did not decide this issue. Rather, the trial court granted the evidentiary hearing, and the parties were so notified that the sole purpose of the hearing was to consider evidence of Roberts' contact with Motorists Mutual's attorneys, and the trial court only heard testimony on this limited issue. Furthermore, we note a lack of service cannot be overcome by evidence that Roberts had actual knowledge of the judgment against him. *Nicholas v. Deal*, 12th Dist. Butler No. CA2002-10-242, 2003-Ohio-7212, ¶ 13 ("It does not matter that a party has actual knowledge of the lawsuit and has not in fact been prejudiced by the method of service").

**{¶ 39}** In accordance with the foregoing, we find that the trial court abused its discretion in overruling Roberts' motion to vacate judgment without holding an evidentiary hearing. Roberts' second assignment of error is therefore sustained.

**{¶ 40}** The trial court's decision to deny Roberts' motion for relief from judgment pursuant to Civ.R. 60(B) is affirmed. However, to the extent the trial court's decision denied Roberts' motion to vacate a void judgment, the judgment of the trial court is reversed. This cause is remanded with instructions to hold an evidentiary hearing to determine if Roberts was properly served at the outset of the original action.

**{¶ 41}** Judgment is affirmed in part, revered in part, and remanded for further proceedings.

RINGLAND, P.J., and PIPER, J., concur.