[Cite as *Hussain v. Hussain*, 2020-Ohio-531.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| JEREENA HUSSAIN, | : | CASE NO. CA2019-01-024 |
| Appellee, | : | O P I N I O N<br>2/18/2020 |
| | : | |
| - vs - | : | |
| | : | |
| MUSHTAQ HUSSAIN, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR14-01-0046

Bruce A. Hunter, 21 Reily Road, Cincinnati, Ohio 45215, for appellee

Nadeem Quraishi, 4938A Wunnenberg Way, West Chester, Ohio 45069, for appellant

**M. POWELL, J.**

{¶ 1} Appellant, Mushtaq Hussain ("Husband"), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, reinstating his original child support obligation and awarding attorney fees to appellee, Jereena Ameen ("Wife," fka Jereena Hussain).

{¶ 2} The parties were divorced on June 11, 2015, after 22 years of marriage. At

the time of the divorce, the parties had two children living at home, a 17-year-old son and a 20-month-old daughter. The divorce decree awarded the Liberty Township, Butler County, Ohio marital home (the "Liberty Township residence") to Husband, required the parties to equally divide the marital portion of Husband's two retirement accounts pursuant to a Qualified Domestic Relations Order ("QDRO"), and ordered Husband to pay $791.09 per month per child in child support. Husband's child support obligation was based upon his annual income of $178,500 as a Procter & Gamble ("P&G") employee. At the time of the divorce, Husband had nearly $900,000 in his P&G retirement accounts.

{¶ 3} In July 2015, Husband appealed from the final divorce decree, solely challenging the trial court's determination that the parties were validly married in India thereby rendering their marriage valid in Ohio. We affirmed the trial court's holding that the parties were legally married. *Hussain v. Hussain*, 12th Dist. Butler No. CA2015-07-127, 2016-Ohio-3214.

{¶ 4} In December 2015, Husband requested that the Butler County Child Support Enforcement Agency ("CSEA") conduct an administrative review of his child support obligation. Husband, who was 51 years old at the time, had taken a voluntary separation of employment from P&G in anticipation of the elimination of his position and claimed his income had consequently decreased. Husband was last employed by P&G on June 30, 2015, and received a $178,500 lump-sum severance payment from P&G in July 2015. In his request, Husband listed the Liberty Township residence as his address.

{¶ 5} Upon conducting an administrative review, the CSEA recommended that Husband's child support obligation be significantly reduced, effective March 1, 2016. Wife requested an administrative adjustment hearing. In May 2016, the CSEA hearing officer affirmed the recommendation to significantly reduce Husband's child support obligation. In so ruling, the hearing officer determined that Husband's severance pay was a "one-time

- 2 -

payment" akin to a lump-sum lottery prize and should not be considered as income to Husband.

{¶ 6} Wife requested a judicial mistake-of-fact hearing in the trial court. In July 2016, Husband filed a notice of intent to relocate to India, effective September 1, 2016, and provided his address in India. Thereafter, he successfully moved to continue the mistake-of-fact hearing twice. The hearing was ultimately held before a magistrate in December 2016. Both parties were present. Wife was represented by counsel; Husband was pro se.[1] On January 24, 2017, the magistrate issued a decision ("Magistrate's Decision") adopting the CSEA's recommendation that Husband's child support obligation be significantly reduced.

{¶ 7} Wife filed objections to the Magistrate's Decision on February 7, 2017, and supplemental objections on March 20, 2017. The former were served upon Husband at his address in India by regular mail; the latter were served at his address in India by regular mail and email. The trial court conducted a hearing on the objections on March 20, 2017 ("child support hearing"). Wife was present, represented by counsel. It is unclear whether Husband was present.[2] By decision filed on May 18, 2017 (the "Child Support Decision"), the trial court sustained Wife's objections, overruled the Magistrate's Decision, and reinstated the original child support obligation of $791.09 per month per child. In so ruling, the trial court rejected the CSEA's determination that Husband's severance pay was akin

---

1. In the interim, the parties' son became emancipated for child support purposes, having turned 18 years old and graduated from high school, and Husband's child support obligation for the son was terminated.

2. The trial court's Child Support Decision states that Wife was present and represented by counsel at the child support hearing and that Husband "was *pro se*." On appeal and below, Husband argued he was not properly served with Wife's objections in India and as a result did not attend the hearing. No transcript of the child support hearing has been filed with the record on appeal. In one of his filings, Husband attached what purports to be the first page of a transcript of the child support hearing, indicating Husband was not present at the beginning of the hearing. In 2018, the trial court conducted a hearing on several motions of the parties, including a motion for relief from judgment filed by Husband on the ground he was not properly served with notice of the child support hearing. In denying Husband's motion, the trial court did not address whether Husband was present at the child support hearing.

to lottery winnings and therefore excluded from gross income, and noted that Husband continued to receive deposits from P&G and be covered by P&G's health insurance plan through June 2016. Importantly, the trial court found that Husband "received one year of severance from his former employer representing his salary through June 30, 2016; his income through June 30, 2016 continued to be $178,500."

{¶ 8} In April 2018, Husband moved for relief from and to set aside the trial court's Child Support Decision, claiming that he lived in India and was not properly served with Wife's objections and notice of the child support hearing, and that the trial court improperly found that his income in 2016 was $178,500 when in fact he received the $178,500 severance pay during the 2015 calendar year. Wife moved to file QDROs, find Husband in contempt for his ongoing failure to cooperate with the division of his P&G retirement accounts, and for attorney fees. On August 30, 2018, the trial court held a hearing on these and other motions filed by the parties. At the beginning of the hearing, the parties reached an agreement regarding the execution of QDROs dividing Husband's two P&G retirement accounts. This issue had been languishing for more than three years since the divorce decree was filed in June 2015. Wife was allocated 48 percent of one retirement account and 45 percent of the other.

{¶ 9} By decision filed on August 30, 2018, the trial court denied Husband's motion for relief from and to set aside its Child Support Decision as follows:

> The record reflects that [Husband] did file the notice of intent to relocate to his address in India on July 10, 2016. [Husband] testified that the court's 5/18/17 Decision was sent to the [Liberty Township residence] address. [Husband] maintains residences at both addresses.
>
> [Husband] had already submitted to the court's jurisdiction and was properly served with [Wife's] objection at the address on record.

{¶ 10} In that same decision, the trial court noted that Wife's motion for attorney fees

- 4 -

related to the QDROs would be heard at a later date.[3]  A hearing on Wife's motion was held in December 2018.  On January 2, 2019, the trial court granted Wife's motion and awarded her $13,636.59 in attorney fees.  The trial court found that given the parties' disparity of income and earning ability, Husband's ongoing reluctance to divide the retirement accounts, and the ongoing litigation regarding this issue, an award of attorney fees was equitable and appropriate and Wife's "requested attorney fees in the amount of $13,636.59 is reasonable and appropriate."

{¶ 11}  Husband now appeals, raising four assignments of error.

{¶ 12}  Assignment of Error No. 1:

{¶ 13}  THE TRIAL COURT ERRED IN FINDING THAT HUSBAND WAS PROPERLY SERVED WITH OBJECTIONS, NOTICE OF THE 5/18/17 HEARING, DETERMINING THAT HE WAS PRESENT AT THE HEARING ON MAY 18, 2017[,] AND THAT HE WAS PROPERLY SERVED WITH THE DECISION FROM MAY 18, 2017.  (sic)

{¶ 14}  Husband generally argues that the trial court erred in denying his motions for relief from judgment and to set aside the trial court's Child Support Decision upon finding he "was properly served with [Wife's] objection at the address on record."  Specifically, Husband asserts that the Child Support Decision is void because (1) he was improperly served with Wife's objections to the Magistrate's Decision at his address in India by ordinary mail, (2) as a result, he did not attend the child support hearing and was therefore deprived of the opportunity to be heard, and (3) he was improperly served with the trial court's Child Support Decision at the Liberty Township residence.  Because Husband resides in India, he asserts that Civ.R. 4.5(A) requires service pursuant to the Hague Convention on the

---

3. Husband appealed the trial court's August 30, 2018 decision.  On November 6, 2018, we dismissed the appeal for want of a final appealable order.  *Hussain v. Hussain,* 12th Dist. Butler No. CA2018-09-191 (Nov. 6, 2018) (Entry of Dismissal).

Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention").

{¶ 15} A valid court judgment requires both proper service under the applicable Ohio rules and adequate notice. *In re A.G.*, 4th Dist. Athens No. 14CA28, 2014-Ohio-5014, ¶ 14. Service of process is consistent with due process standards where it is reasonably calculated, under the circumstances, to give interested parties notice of a pending action and an opportunity to appear and present their objections. *Motorists Mut. Ins. Co. v. Roberts*, 12th Dist. Warren No. CA2013-09-089, 2014-Ohio-1893, ¶ 32; *Samson Sales, Inc. v. Honeywell, Inc.*, 66 Ohio St.2d 290, 293 (1981).

{¶ 16} Civ.R. 4.5 governs service of process on a party in a foreign country. As pertinent to Husband's argument, Civ.R. 4.5(A) provides that

> When Civ.R. 4.3 or Civ.R. 4.4 or both allow service upon a person outside this state and service is to be effected in a foreign country, service of the summons and complaint shall be made as provided in this rule.
>
> (A)Hague Convention signatory.
> If the foreign country is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, service shall be pursuant to a method allowed by the Articles of that Convention, including any method allowed by Article 8 or Article 10 to which the foreign country has not objected in accordance with Article 21.

{¶ 17} The Hague Service Convention is a multilateral treaty "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 2107 (1988). The United States and India are both signatory countries. The Hague Service Convention requires signatory countries to establish a central authority to receive requests for service of documents from other countries, and to serve those documents by methods compatible

with the internal laws of the receiving state. *Id.*; Article 5 of the Convention. Service through a country's central authority is the principal means of service under the Hague Service Convention. *FTC v. Repair All PC, LLC*, N.D.Ohio No. 1:17 CV 869, 2017 U.S. Dist. LEXIS 83173, *10 (May 31, 2017). Article 10 of the Convention also allows service "by postal channels, directly to persons abroad" as well as "directly through the judicial officers" of the recipient-nation as long as the recipient-nation has not objected to the specific alternative means of service used. *Id.* at *10-11. In signing the Convention, India objected to the methods of service provided in Article 10 of the Convention. *Id.* at *11; *Venkatesan v. Venkatesan*, Conn.Super. No. CV095028278S, 2009 Conn. Super. LEXIS 1941, *6 (June 25, 2009).

{¶ 18} Upon reviewing the applicable Ohio Rules of Civil Procedure, we find that Husband's invocation of the Hague Service Convention regarding Wife's objections and the trial court's Child Support Decision is misplaced and that service of motions, objections, and judicial decisions upon a person in a foreign country is governed by Civ.R. 5, and not by Civ.R. 4.5.

{¶ 19} Civ.R. 4.5 sets forth the rules for service upon an individual in a foreign country. If the foreign country is a signatory to the Hague Service Convention, Civ.R. 4.5(A) requires that service be made in compliance with the Convention. By its plain terms, however, Civ.R. 4.5 only applies to "service of the summons and complaint." By contrast, Civ.R. 5 specifically governs the "[s]ervice and filing of pleadings and other papers subsequent to the original complaint," and does not mention the Hague Service Convention or provide special procedural requirements for international service. Thus, the Hague Service Convention only applies to the initial service of process, namely, the summons and original complaint. Following service of the summons and complaint, parties must serve future pleadings and papers, including motions and objections, under the less stringent

standards of Civ.R. 5.

{¶ 20} Several federal courts have reached the same conclusion when analyzing service of process upon an individual in a foreign country under Fed.R.Civ.P. 4 and Fed.R.Civ.P. 5. While these cases are not controlling on this court, we find their reasoning to be persuasive and therefore apply it. For instance, relying upon the United States Supreme Court's finding that Article 1 of the Hague Service Convention "refers to service of process in the technical sense" in *Schlunk*, a New York federal district court held that

> [T]he Hague Service Convention only applies to the initial service of process, namely the summons, not subsequent judicial documents. * * * 1 B. Ristau, International Judicial Assistance (Civil and Commercial) §4-2 (2000 revision) (recognizing that the Hague Service Convention applies only where there is a need to make "formal delivery" of a judicial document "to charge [the recipient] with notice of the institution of a legal proceeding.") The structure of the Federal Rules of Civil Procedure supports this distinction. Rule 4(f) sets forth the rules for service of a summons outside the United States and expressly refers to the Hague Service Convention. Rule 5, however, addresses the service of subsequent judicial documents, including written motions, and does not mention the Hague Service Convention or provide special procedural requirements for international service. Apart from those judicial documents which must be served pursuant to Rule 4, Plaintiff need only serve judicial documents, including the present motion, on Defendant pursuant to Rule 5 despite Defendant's foreign residence.

*SEC v. Credit Bancorp, Ltd.*, S.D.N.Y. No. 99 Civ. 11395, 2011 U.S. Dist. LEXIS 14797, *10-11 (Feb. 14, 2011), citing *Schlunk*, 108 S.Ct. at 2018. *See also DJL Mtge. Capital v. Roland*, D.V.I. No. 2013-0010, 2015 U.S. Dist. LEXIS 88064 (July 1, 2015); *Trade Well Internatl. v. United Cent. Bank*, W.D.Wis. No. 12-cv-701-wmc, 2014 U.S. Dist. LEXIS 131223 (Sep. 12, 2014); *Kozaczek v. New York Higher Edn. Servs. Corp.*, D.Vt. No. 1:13-cv-00074-jgm, 2014 U.S. Dist. LEXIS 70605 (May 20, 2014); and *S&S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Group Co.*, E.D.N.Y. No. 07-CV-4909, 2012 U.S. Dist. LEXIS 38608 (Jan. 13, 2012).

{¶ 21} Turning now to Civ.R. 5, the rule allows service of pleadings and other papers subsequent to the original complaint by "mailing [the document] to the person's last known address by United States mail, in which event service is complete upon mailing," and by "sending it by electronic means to a facsimile number or e-mail address" provided by the party to be served. Civ.R. 5(B)(2) (c) and (f). As stated above, on July 18, 2016, Husband filed a notice of intent to relocate in India, effective September 1, 2016. The record further indicates that Husband and Wife's counsel subsequently communicated via emails.

{¶ 22} Husband's address in India was set forth in the caption of Wife's objections and supplemental objections. Wife's objections were served upon Husband at his address in India by ordinary United States mail; Wife's supplemental objections were served at his address in India by ordinary United States mail and email. Wife's objections were therefore mailed to Husband's last known address and were properly served upon Husband in compliance with Civ.R. 5(B)(2)(c). The supplemental objections were likewise properly served upon Husband at his last known address via email in compliance with Civ.R. 5(B)(2)(c) and (f).

{¶ 23} Both Wife's objections and supplemental objections provided notice to Husband that a hearing would be held on the objections on March 20, 2017. While the supplemental objections were filed on the day of the hearing, Wife's objections were filed on February 7, 2017, thereby providing Husband an opportunity to appear and present his objections, or, as he has done on several occasions, move to continue the hearing to a later date when he would be in the United States. Husband, however, failed to so move the trial court. Husband further did not establish that service was made to an address in India where it would not be reasonably calculated to reach him. Service of process therefore comported with due process requirements. *Motorists Mut. Ins. Co.*, 2014-Ohio-1893 at ¶ 32; *Samson Sales, Inc.*, 66 Ohio St.2d at 293.

{¶ 24} Regarding the mailing of the trial court's Child Support Decision to the Liberty Township residence, we find it was improperly served there as Husband has relocated to India and has been domiciled there effective September 1, 2016, as indicated by his notice of intent to relocate to India. However, given the fact we are addressing Husband's child support argument on the merits in his second assignment of error and Husband's testimony in a subsequent hearing that he received the trial court's Child Support Decision when he briefly stayed in the Liberty Township residence when he came to Ohio in August or September 2017, we find no prejudice.

{¶ 25} In light of the foregoing, Husband's first assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ERRED IN DETERMINING THAT HUSBAND'S INCOME IN 2016 WAS $178,[5]00.

{¶ 28} Husband argues the trial court erred in finding that the $178,500 lump-sum severance pay he received in 2015 was his gross income in 2016 for child support purposes. At the time of the June 2015 divorce decree, Husband's annual income was $178,500. His last day of employment with P&G was on June 30, 2015; he received the $178,500 severance pay from P&G in July 2015. In overruling the Magistrate's Decision and reinstating the original child support obligation of $791.09 per month per child, the trial court found that Husband "received one year of severance from his former employer representing his salary through June 30, 2016; his income through June 30, 2016 continued to be $178,500."

{¶ 29} For child support calculation purposes, "gross income" is defined as "the total of all earned and unearned income from all sources *during a calendar year*, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and * * * severance pay[.]" (Emphasis added.) R.C. 3119.01(C)(12). Pursuant to the plain language

- 10 -

of the statute, "gross income" is "all income from all sources received by a parent during a calendar year[.]" *Larkin v. Larkin*, 2d Dist. Greene Nos. 2015-CA-07 and 2015-CA-21, 2016-Ohio-1563, ¶ 20. In other words, a child support obligor's "gross income" is based upon the calendar year in which it was received.

{¶ 30} The record shows that during the August 30, 2018 hearing, Wife introduced several exhibits, including Husband's W-2 statements from P&G for 2015 and 2016 and his year-end pay stubs for 2013 through 2016, showing Husband's annual income from P&G for each of those years. These exhibits confirmed that Husband received his $178,500 severance pay in 2015 and that he received $16,378.14 in income from P&G in 2016. However, this documentation of Husband's income is not referred to in any of the administrative or judicial decisions, including the trial court's Child Support Decision. Thus, we must assume that this information was not available during those administrative and judicial proceedings and was not considered in determining Husband's income for child support purposes. We further note that there are no transcripts of the administrative proceedings or the trial court's child support hearing, and that the CSEA did not detail the information it relied upon in recommending that Husband's child support obligation be significantly reduced.

{¶ 31} Husband's separation agreement with P&G, which was considered by the trial court in its Child Support Decision, plainly indicates that Husband received his severance pay as a lump sum in 2015:

> As soon as administratively practical after your Last Day of Employment, P&G will provide you with a Separation Payment of $178,500.00 less legally required withholdings and deductions. In no event will payment be made before expiration of the seven-day revocation period discussed below or later than the March 15th of the year following the year which includes your last day of employment.

{¶ 32} Additionally, in his May 2016 administrative decision, the CSEA hearing

- 11 -

officer noted Husband's testimony that "his last day of official employment was June 30, 2015[,] and he accepted a one time severance award in conjunction with his termination in the gross amount of $178,500 which he received in July 2015." The CSEA hearing officer further found that "the severance payout appears to be a one time payment[.]"

{¶ 33} Based upon the foregoing, we find that the trial court erred in prorating the $178,500 severance pay Husband received in 2015 through the first half of 2016 and calculating Husband's child support obligation based upon that extrapolation. We therefore reverse the trial court's determination that Husband's "gross income" was $178,500 through June 30, 2016, and remand the matter for the trial court to redetermine Husband's child support obligation.

{¶ 34} Husband's second assignment of error is sustained.

{¶ 35} Assignment of Error No. 3:

{¶ 36} THE TRIAL COURT ERRED IN AWARDING WIFE ALMOST $14,000 IN ATTORNEY FEES FOR PREPARATION OF THE QDROS.

{¶ 37} Husband argues the trial court erred in awarding Wife $13,636.59 in attorney fees for the preparation of the QDROs. Husband asserts the amount awarded is excessive because (1) all relevant information needed to prepare the QDROs was known at the time of the final divorce hearing in October 2014, (2) Wife's former counsel had successfully served subpoenas upon P&G and received responses by February 2017, yet Wife's new counsel issued new and duplicative subpoenas in the summer of 2018, and (3) actions taken by P&G to quash the subpoenas cannot be attributed to him.[4] Husband does not challenge the reasonableness of the hourly rate charged by Wife's counsel.

---

4. Husband further challenges the award of attorney fees, arguing he was not found in contempt regarding the QDROs. The record refutes such assertion. In any event, a trial court has the authority to award a spouse attorney fees even in the absence of finding the other spouse in contempt. *Cirino v. Cirino*, 9th Dist. Lorain No. 11CA009959, 2011-Ohio-6332, ¶ 15.

{¶ 38} "An award of attorney fees is within the sound discretion of the trial court." *Lightfield v. Lightfield*, 12th Dist. Warren No. CA2017-11-164, 2018-Ohio-4383, ¶ 26. A trial court's decision to award attorney fees will be reversed only if it amounts to an abuse of discretion. *Id.*

{¶ 39} The trial court awarded Wife attorney fees in accordance with R.C. 3105.73(B), which provides in relevant part, "In any post-decree motion or proceeding that arises out of an action for divorce, or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." "In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." *Id.*; *Lightfield* at ¶ 27.

{¶ 40} The record indicates that following the October 2014 final divorce hearing, the parties placed detailed stipulations on the record regarding their financial accounts, including Husband's two P&G retirement accounts. However, neither the stipulations nor a transcript of the October 2014 hearing are in the record. The June 2015 divorce decree required Wife's counsel to prepare the QDROs and Husband to cooperate with and facilitate the preparation of the QDROs, and reserved jurisdiction to award costs and attorney fees against a noncomplying party.

{¶ 41} In July 2016, Husband filed a motion for relief from a previous judgment in which he requested that the trial court "assign" the P&G retirement accounts to him because they belonged to him pursuant to India Muslim Law. When the trial court denied Husband's motion in September 2016, his P&G retirement accounts had still not been divided. He had, however, withdrawn over $247,000 from one of the accounts in early 2016. Because Husband asserted a premarital interest in the accounts, the parties were ordered to

"cooperate with any valuation needed to effect the equal division of the marital portion of the retirement accounts." Husband was further ordered to "cooperate with an inquiry as to a valuation." In a December 20, 2016 contempt order, the trial court ordered Husband to "meet with a representative of P&G no later than 12/28/16 to obtain documentation of his start date, separation date, and any other statements to effectuate an equitable division" of the retirement accounts. The trial court further ordered Husband to appear for review of sanctions nine days later.

{¶ 42} On December 29, 2016, the trial court made the following findings regarding Husband's failure to comply and cooperate with effecting the division of his retirement accounts:

> [Husband] provided only two recent statements, and a self generated spreadsheet for the division of the two P&G retirement accounts. He has not complied. [Husband] steadfastly maintains that [Wife] is only entitled to the retirements that accrued while the parties lived in Ohio.
>
> However, a remedy exists for this information.
>
> [Wife's counsel] shall subpoena the records from the Plan Administrator(s) for both accounts from the date of marriage through the date of separation, so that [QDROs] can be drafted.
>
> [Husband] failed to comply and cooperate with obtaining these records. He did not even meet with his employer until 12/28/16. [Wife] is given leave to submit a motion for attorney fees for the subpoena and review of the records.

{¶ 43} In February 2017, Wife's counsel subpoenaed records from P&G regarding Husband's retirement accounts. Despite these requirements and subpoenas, no QDROs had been filed as of January 2018 when Wife retained new counsel. On April 13, 2018, Wife's new counsel moved to file the QDROs, find Husband in contempt for his ongoing failure to cooperate with the division of his P&G retirement accounts, and for attorney fees. In July 2018, Wife's counsel issued subpoenas to P&G. The QDROs were ultimately

executed on August 30, 2018, and a hearing on Wife's motion for attorney fees was held on December 27, 2018. Both parties submitted exhibits. Wife also presented expert witness testimony regarding the reasonableness and necessity of Wife's attorney fees, the impact of Husband's "obstreperous" conduct, and the benefits obtained on Wife's behalf.

{¶ 44} A thorough review of the record shows that Husband continued to impede and delay the required division of his retirement accounts in 2018. In August 2018 alone, Husband went to great efforts to frustrate P&G's response to the subpoenas while at the same time he refused to stipulate to the admissibility of his retirement account records. Specifically, Husband (1) requested that the trial court not divide his retirement accounts at all in order to make the property division more equitable, (2) complained in writing to P&G about the company's production of his retirement account statements in response to Wife's subpoenas, (3) demanded that P&G retrieve all subpoena responses provided to Wife since February 2017, (4) demanded that P&G not further respond to subpoenas unless they were served pursuant to the Hague Service Convention and "verified and confirmed by [Husband] with a written notification," (5) filed a memorandum opposing Wife's subpoenas in the trial court, and (6) moved to quash Wife's subpoenas.

{¶ 45} Notwithstanding the various arguments advanced by Husband in support of his conduct, there was no reasonable basis for him to oppose Wife's subpoenas or the admissibility of his retirement account statements. For example, despite Husband's long-held assertion he had premarital interest in the retirement accounts, one exhibit plainly showed he did not participate in the plans until seven years after the parties were married. Because Husband refused to admit or stipulate to the admissibility of his retirement account records, Wife's counsel was required to subpoena P&G witnesses and otherwise prepare for the contempt trial regarding Husband's failure to cooperate with the division of his retirement accounts set forth for August 30, 2018, over three years after the filing of the

divorce decree ordering the division.

{¶ 46} Given Husband's opposition and interference with what should have been a relatively simple discovery process and his overall obstruction in facilitating the execution of the QDROs, thereby resulting in additional attorney services and unnecessary incurring of attorney fees by Wife, we find that the trial court did not abuse its discretion in ordering Husband to pay Wife $13,636.59 in attorney fees. *See Dragon v. Dragon*, 11th Dist. Ashtabula Nos. 2009-A-0058 and 2010-A-0005, 2010-Ohio-4694.

{¶ 47} Husband's third assignment of error is overruled.

{¶ 48} Assignment of Error No. 4:

{¶ 49} THE TRIAL COURT ERRED IN DENYING HUSBAND'S MOTION FOR RELIEF FROM JUDGMENT REGARDING INEQUITABLE DISTRIBUTION OF ASSETS AND DEBTS.

{¶ 50} During the parties' marriage, Husband entered into two business loan agreements in India for approximately $203,417, without Wife's knowledge or consent. The divorce decree awarded the business loans to Husband as his "non-marital property and separate debt." The decree further provided that the parties would equally divide the marital portion of Husband's two P&G retirement accounts. On August 21, 2018, three years after the divorce decree, Husband moved for relief from the divorce decree pursuant to Civ.R. 60(B)(4) and (5). Husband argued that (1) Wife and her brother had breached Ohio Civil Rules and Indian civil and statutory laws, (2) there were repetitive patterns of judicial bias, and (3) the property division was inequitable because Wife was awarded disproportionately higher assets and no debts whereas he was awarded 34 percent less in financial assets and was further ordered to pay spousal and child support as well the children's college and medical expenses. On August 30, 2018, following a hearing on this and other motions, the trial court denied Husband's Civ.R. 60(B) motion, finding that the motion was not filed in a

timely manner and that Husband failed to provide sufficient, credible evidence to support setting aside the divorce decree. That same day, the parties reached an agreement regarding the specific division of Husband's P&G retirement accounts and executed the QDROs.

{¶ 51} On appeal, Husband argues the trial court erred in denying his Civ.R. 60(B) motion. Husband asserts that while the P&G retirement accounts were equitably divided, the overall division of marital assets is no longer equitable because "pursuant to the Divorce Decree, Husband received a $203,417 liability with no corresponding asset, or approximately 33% less than Wife."

{¶ 52} A trial court may "relieve a party from a final judgment, order or proceedings" when it is no longer equitable that the judgment should have prospective application, or for any other reason justifying relief from the judgment. Civ.R. 60(B)(4) and (5). To prevail on a Civ.R. 60(B) motion, the moving party must demonstrate that (1) he has a meritorious defense or claim to present if relief is granted, (2) he is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) the motion is made within a reasonable time. *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. Failure to meet any one of these three factors is fatal, for all three must be satisfied in order to gain relief. *Scrimizzi v. Scrimizzi*, 12th Dist. Warren No. CA2018-11-131, 2019-Ohio-2793, ¶ 51.

{¶ 53} "For a change in circumstances that results in an inequitable burden to be a basis for a Civ.R. 60(B)(4) motion, the circumstances must have been unforeseeable at the time of entry of the judgment." *Bowman v. Bowman*, 12th Dist. Warren No. CA98-06-070, 1999 Ohio App. LEXIS 49, *6 (Jan. 11, 1999), citing *Knapp v. Knapp*, 24 Ohio St.3d 141, 146 (1986). The grounds for invoking Civ.R. 60(B)(5) must be substantial and relief is generally to be granted only in unusual or extraordinary circumstances. *Bowman* at *6;

*Caruso-Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 66 (1983). The decision to grant or deny a Civ.R. 60(B) motion lies within the trial court's discretion, and the decision will be reversed only for an abuse of discretion. *Scrimizzi* at ¶ 51.

{¶ 54} We find that the trial court did not abuse its discretion in denying Husband's Civ.R. 60(B) motion to set aside the divorce decree and property division. We first note that Husband presented no evidence to justify filing his motion more than three years after the divorce decree was filed. Moreover, although he was fully cognizant of his support obligations and the property division set forth in the divorce decree, including its award of the business loans to him, Husband nevertheless agreed to the specific division of his P&G retirement accounts and the execution of the QDROs a week after filing his Civ.R. 60(B) motion. Civ.R. 60(B)(4) "was designed to provide relief to those who have been prospectively subjected to circumstances which they had no opportunity to foresee or control." *Knapp* at 146. Civ.R. 60(B)(4) was not designed to relieve parties of the consequences of their voluntary, deliberate choices. *Id.* at 145. The circumstances were clearly not unforeseeable as Husband had an opportunity to control the terms of the divorce decree. Nor are the circumstances sufficiently extraordinary or unusual to warrant setting aside the decree under Civ.R. 60(B)(5).

{¶ 55} Furthermore, it is well established that a Civ.R. 60(B) motion cannot be used as a substitute for filing a direct appeal and the doctrine of res judicata will apply to such motion. *Allen v. Allen*, 5th Dist. Muskingum No. CT2013-0015, 2013-Ohio-2729, ¶ 4. In July 2015, Husband appealed from the final divorce decree, challenging the trial court's determination that the parties were validly married in India thereby rendering their marriage valid in Ohio. Any argument regarding the property division could have been raised in the alternative in the direct appeal, but was not. Having failed to raise such argument in the direct appeal of the divorce decree, Husband is now barred by the doctrine of res judicata.

*Id.*; *Premier v. Premier*, 5th Dist. Stark No. 2015CA00030, 2016-Ohio-673, ¶ 55.

{¶ 56} Husband's fourth assignment of error is overruled.

{¶ 57} Judgment affirmed in part, reversed in part, and remanded for further proceedings.

RINGLAND, P.J., and PIPER, J., concur.